IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**TINA L. WALLACE**                                                                                          **PLAINTIFF**

VS.                                                        CIVIL ACTION NO. 3:21-cv-326-KHJ-MTP

**CITY OF JACKSON, CHOKWE ANTAR LUMUMBA,**
in his Individual Capacity,
**JAMES DAVIS,**
in his Individual Capacity,
and **JOHN DOES 1-4**                                                                                 **DEFENDANTS**

### COMPLAINT
**(Jury Trial Demanded)**

Tina L. Wallace, by and through her attorney of record, hereby files this Complaint against the Defendants, and in support thereof would show unto the Court, the following to-wit:

### JURISDICTION AND VENUE

1.  The defendants in this action deprived Tina L. Wallace (hereinafter "Wallace") of various constitutional rights including but not limited to the deprivation of her right to Equal Protection to be free from sex discrimination and retaliation. This lawsuit is authorized and instituted pursuant to 42 U.S.C. § 2000E et seq., 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2202.

2.  Venue is proper pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to the acts complained of by Wallace occurred in the Southern District of Mississippi, Northern Division.

## PARTIES

3. Plaintiff Tina L. Wallace is a female adult resident citizen of Hinds County, Mississippi.

4. Defendant, City of Jackson, is a Mississippi municipality. The City of Jackson may be served with process of this Court by serving a copy of the Summons and Complaint upon Mayor Antar Chokwe Lumumba.

5. Defendant, Chokwe Antar Lumumba, is the mayor of the City of Jackson police (hereinafter "Lumumba"). Lumumba may be served with process of this Court by serving a copy of the Summons and Complaint upon him wherever he may be found. Lumumba is being sued in his individual capacity.

6. Defendant, James E. Davis, ("Davis") is the police chief of the Jackson Police Department (hereinafter "JPD"). Davis may be served with process of this Court by serving a copy of the Summons and Complaint upon him wherever he may be found. Davis is being sued in his individual capacity.

7. John Does 1-4 are individuals whose identities are unknown to the Plaintiff at this time.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. All condition precedent to jurisdiction pursuant to Section 706 of title VII of the Civil Rights Act of 1964, as amended, have been complied with by the Plaintiff to wit: appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission and notification of Right to Sue was received by the Plaintiff from the Equal Employment Opportunity Commission on February 12, 2021. *See*, Exhibit A.

9.     Plaintiff filed a timely complaint based on the time limits contained in § 706 of Title VII of the Civil Rights Act of 1964, as amended.

## STATEMENT OF FACTS

10.    Tina L. Wallace (hereinafter "Wallace") began her career in law enforcement with JPD in February of 1993. Wallace rose through the ranks of JPD and held the following positions: patrol officer, detective, sergeant, lieutenant, commander, and deputy chief. Wallace was selected by former Police Chief Lindsey Horton to serve as Deputy Chief of Patrol Operations for JPD. Wallace was selected to attend the FBI Academy. After Wallace completed her training with the FBI, she returned to her position as Deputy Chief of Patrol Operations a position she held until she was demoted by former police chief Lee Vance.

11.    Aggrieved, Wallace sued the City of Jackson and Lee Vance. Months after Wallace filed suit, Lee Vance stepped down as police chief. Lumumba selected Davis as his choice for interim police chief. After Davis became interim police chief, he returned Wallace to her position as a deputy chief on July 15, 2018. Under Davis' administration, Wallace was named deputy chief of administration. On September 20, 2018, the City Council confirmed Davis as police chief.

12.    Sometime in September of 2018, 911 Public Safety Communications Manager Tonia Louisville-Jones ("Louisville-Jones") alleged she had 281 hours of deferred time (from October 1, 2017 through November 1, 2018), that she wanted to utilize. Louisville-Jones also alleged she was denied her accrued "comp time." Prior to Lousville-Jones' allegations, Patricia Lark Jackson, ("Jackson") JPD's Identification Public Safety Administrator, told Wallace that Commander Stephen Wells was clocking Louisville-Jones and Latrice Adkins. Jackson told Wallace she had addressed the matter with Stephen Wells

3

in the past. Wallace immediately notified Davis and then Assistant Chief Ricky Robinson. Wallace told Davis and Robinson that her preliminary investigation showed Jackson's allegations had merit.

13. On or about October 29, 2018, Davis invited Chaplain Pastor Terri Moore to sit in during a staff meeting due to the tension that existed amongst the executive command staff (James Davis, Ricky Robinson, Deric Hearn, Tiny Harris, Vincent Grizzell and Wallace). Wallace complained that Assistant Chief Ricky Robinson was constantly interfering with her ability to carry out her duties as deputy chief of administration. Wallace reported that Assistant Chief Ricky Robinson did not interfere with the male deputy chief carrying out their duties.

14. On or about October 31, 2018, before Wallace completed and submitted her investigative packet of Louisville-Jones, Larry Turner, former City of Jackson Equal Employment Opportunity Officer, emailed Wallace a memorandum outlining Louisville-Jones's complaint that she was being harassed by Wallace. Wallace was required to respond in writing to Lousiville-Jones' complaint.

15. On or about November 26, 2018, Wallace completed her investigation into whether Well was punching Louisville-Jones in. Wallace submitted her findings to Davis. Louisville-Jones' timesheets showed Wells was punching the clock for Louisville-Jones when Wells was not Louisville-Jones' immediate supervisor and Wells was not in her chain of command. Wells did not provide any justifications for frequently punching the clock for Louisville-Jones. No action was taken against Wells.

16. On or about December 17, 2018, while on her way to the training academy for the 57th Police Recruit Class's graduation practice, Wallace received a phone call from Ervin Bradley, a.k.a. Hondo Lumumba, a member of Lumumba's inner circle. Ervin Bradley

passed the telephone to Lumumba, who said: "Tina, let me say, I'm very, very impressed. I'm very happy with the work you're doing. I'm extremely impressed and you ... I have peace that there is competence going on. I have peace that – you know – real work is happening."

17.     Lumumba continued: "Understand this … that, you know because of history or whatever part of history … Well, first and foremost, all before me … the part of history that I don't understand.  You got people gunning for you.  Right … and people will continue to do that.  Some people will never have peace in their spirit about you… And what I will say is this, continue to do what you're doing.  Right … just always remember as you communicate and as you do things upright, that your communication is sound that even your detractors at the end of the day that people who are watching can never say anything negative about you…And the reason I say that is because you're not doing anything you don't need to be doing and that you shouldn't be doing.  And I'm actually happy with what you're doing. You have a skillset that can ultimately make you chief. Right…Now, the reality is this … and imma (sic) be honest as a man.  Right.  I know that your path to that is harder than most men.  Right … because there are things that you have to do in leadership positions that anybody would need to do, but just because you're a woman, they gone give you more hell about it.  Right … and that's the reality. That's the reality and we got to confront this world that's like that."

18.     "But … but ultimately, I just want you to keep that in your mind because I would like to … you know … when you become chief … you know.  I want to be there with you. Right … and … and smiling with you knowing that … that nobody's silliness because you're serious about your work, cause you're intelligent, because you think, and because you're passionate that nobody uses that against you…But … but … but this isn't for …

5

Don't you worry about anything. I'm fully with you. I fully think you're doing a good job, but you're going to have those little whispers. Just like I got whispers. We all have whispers. Right."

19. Lumumba explained: "[i]n all honesty and understand that … that I'm a man of faith … you know. Ah, and I try to choose my words carefully. My father told me … you know … I don't care what words you use, so long as it effectively communicates what is within your heart. With that being said, I have learned that so many within the Jackson Police Department are full of shit … Right…Just to be honest with you, and I won't say that the majority. It's just so many clicks. It's a difficult environment to navigate … Right. So, I can see you're never going to satisfy everybody and that shouldn't be your goal."

20. On or about Thursday, January 3, 2019, Wallace received a memorandum from Larry Turner outlining Commander Jaye Coleman's ("Coleman") complaint alleging Wallace was retaliating against him for defending Louisville-Jones. On or about April 16, 2019, Coleman told Wallace he dropped his retaliation complaint. Wallace immediately informed Robinson and Davis that Coleman had abandoned his retaliation complaint.

21. On February 6, 2019, the defendants paid Wallace $75,000.00 to settle her claims of race and sex discrimination and retaliation in *Wallace v. City of Jackson*, 3:17cv270.

22. On Tuesday, February 26, 2019, Davis disseminated a memorandum to all patrol officers and detective personnel informing them of mandatory meeting dates with Lumumba on Wednesday, February 27, 2019 from 1400 – 1600 hours; Thursday, February 28, 2019 from 1400 – 1600 hours; Wednesday, March 6, 2019 from 0730 – 0930 hours; and Thursday, March 7, 2019 from 0730 – 0930 hours. No supervisor of any rank was invited to attend the mandatory meetings.

22. On Friday, April 12, 2019, all deputy chiefs were called to Davis' conference room for a meeting with consultants retained by Lumumba's office to assist with the alleged problems or complaints of employees. Wallace and other deputy chiefs were told that the consultants would be following up with each of them. Wallace was never contacted by the consultants.

23. On or about May 1, 2019, Assistant Chief Ricky Robinson ("Robinson") called Wallace and directed her to appear in his office along with her male staff: Commanders Tyrone Buckley, Jaye Coleman and Marco Johnson. Robinson did not instruct Wallace to invite Commander Velma Johnson, who worked with the male commanders under Wallace. At the meeting, Robinson unveiled changes in the organizational structure of units under Wallace's purview. Robinson did not announce any changes in the organizational structure of units under the direction of the male deputy chiefs. After the meeting, Wallace complained to Davis that Robinson was continuing to treat the male deputy chiefs more favorable than he treated her, i.e., micromanaging Wallace while allowing the male deputy chiefs to run their divisions without interference from Robinson.

24. On May 3, 2019, Lumumba held a meeting at JPD headquarters with civilian employees. Lumumba assured employees that changes were forthcoming. During late May 2019, after Lumumba's meetings with police and civilian employees, Lumumba's Chief of Staff, Dr. Safiya Omari, told Wallace Lumumba was being pressured to do something about her. Omari also told Wallace Wilma Scott, the City's Director of Personnel, had it out for her. Omari told Wallace she wanted to set up a meeting between Wilma Scott and Wallace and she had already told Lumumba about the meeting.

25. On Tuesday, May 28, 2019, all deputy chiefs were summoned to a meeting at the Hood Building with Lumumba after his press conference about a police officer who

committed suicide after the family of a teen-age girl reported the officer for having sex in a JPD patrol vehicle with her underage daughter. Lumumba, Dr. Safiya Omari, Ervin Bradley, a.k.a. Hondo Lumumba, Davis, then Assistant Chief Ricky Robinson, Deputy Chief Deric Hearn, Deputy Chief Vincent Grizzell, Deputy Chief Tiny Harris and Wallace attended the meeting.

26. Lumumba told the deputy chiefs, sworn and civilian personnel complained that the deputy chiefs lacked interpersonal skills; that deputy chiefs were telling employees if they don't like it, they can leave; deputy chiefs were back-stabbing each other and not playing as a team; there was no vision of leadership; lack of training; lack of appreciation of skillset; deputy chief were not treating their subordinates with respect; deputy chiefs were retaliating against their subordinates; deputy chiefs engaged in nepotism and favoritism (while mentioning "Hondo" wasn't his biological uncle); deputy chief told their subordinates they were receiving directives from Lumumba; and deputy chiefs were not owning up to their directives.

27. Lumumba stated he was not going to share specific complaints. Lumumba, however, demanded all deputy chiefs resign by May 31, 2019 and serve in an interim capacity. Pursuant to Lumumba's directive, Wallace, under duress, submitted her resignation on May 29, 2019. Like the male deputy chiefs, Wallace continued to serve in her position as "interim" deputy chief of administration.

28. During the week of August 5 – 10, 2019, all deputy chiefs and commanders were ordered to submit their applications/resumes for their interim positions. Wallace submitted her resume along with documents to show she possessed a master's degree, a bachelor's degree, and a Federal Bureau Investigations National Academy (FBINA) certificate.

Wallace also ranked number 1 of the highest tested rank on the lieutenant's promotional ranking in September 2013.

29. On or about Wednesday, August 21, 2019, Davis informed Wallace that Officer Torrence Mayfield ("Mayfield") would be operating as the JPD's liaison with the City of Jackson Personnel Department and as a recruiter for civilian and sworn applicants. Prior to Mayfield's selection, Wallace has served as a JPD liaison with the city's personnel department. Davis instructed Wallace not to contact the city's personnel department but to channel all requests through Mayfield. The male deputy chiefs were not required to answer or channel anything through an officer like Mayfield who had no rank in the department.

30. On or about Wednesday, September 4, 2019, Lumumba, Dr. Omari, Davis, Robinson, Bradley a.k.a. "Hondo" and two male consultants Barry Powell and Rick Byrd interviewed Wallace for deputy chief of administration, a position Wallace held until Lumumba forced her to resign. Davis told Wallace that evening she did an excellent job answering questions during her interview.

31. As Lumumba warned Wallace, she continued to be the subject of whispers and some police officers and civilian employees "never had peace in their spirit" about Wallace who routinely advocated JPD should take action against police officers and civilian employees who engaged in criminal or unethical conduct.

32. On or about September 9, 2019, Wallace received information about alleged criminal activity, gang and drug affiliation by former Police Recruit London Taylor from JPD Narcotics Detective Michael Martin. At the time, London Taylor was in the academy with the 58th Police Recruit class. Davis instructed Wallace to conduct an investigation. Wallace was accompanied by deputy chief Deric Hearn. Wallace contacted officials at

Mississippi Standards and Training who advised her that London Taylor could be removed from the class after Wallace found videos of London Taylor with several high-powered weapons, large rolls of money, photographs of London Taylor throwing gang signs, and what appeared to be marijuana plants. Wallace reported her findings to Davis and Robinson. No action was taken against London Taylor until Wallace later discovered that London Taylor had stolen JPD patches during the recruits' tour of the supply unit in JPD's headquarters.

33. On September 9, 2019, Wallace generated a denial letter for Davis' signature for a police recruit due to alleged sexual misconduct charges while he was in the military. Notwithstanding Davis letter to the male recruit, Robinson scheduled an interviewed for him on or about September 16, 2019. Robinson also excluded Wallace, who was the deputy chief over the hiring/background process, from the interview. Robinson replaced Wallace with a male deputy chief, Vincent Grizzell. The interview panel was changed to consist of only male deputy chiefs: Deric Hearn, Tiny Harris, and Vincent Grizzell. When Wallace told Davis that the rejected police recruit had been granted an interview by Robinson, Davis came to JPD headquarters and stopped the interview. Davis, however, did not take any action against Robinson.

34. On or about Wednesday, October 2, 2019, Wallace notified Robinson about an altered background file that was brought to her attention by former JPD Detective Virgil Jarman ("Jarman"). Wallace informed Robinson she was investigating Jarman's claim to determine who whited out her recommendation to reject the applicant due to the applicant's extensive criminal history. Wallace determined Robinson altered the document and changed Wallace's recommendation. Wallace's reported her findings about Robinson to Davis. Davis took no action against Robinson.

35. On or about Thursday, October 3, 2019, Robinson called Wallace and directed her to appear in his office with Commander Jaye Coleman and Sergeant Kimberly Brown. At the meeting, Robinson discussed a former JPD employee, who was caught by another employee stealing property from the impound lot during his regular duty hours. Robinson accused Wallace of retaliation because she had instructed Commander Jaye Coleman to generate an offense report and sign an affidavit for embezzlement against the former JPD employee. Wallace told Robinson he was retaliating against her because she attempted to hold a male employee accountable. Wallace asked Patricia Reed, who was taking minutes, for a copy of the minutes. Patricia Reed told Wallace Robinson ordered her not to give her a copy of the minutes.

36. On or about Friday, October 4, 2019, Robinson ordered Wallace to submit a memo about the October 3, 2019 meeting in his office. Wallace submitted the memo and accused Robinson was retaliating against her because of her recommendations regarding male applicants and male employees. Robinson accused Wallace of insubordination. Wallace was subjected to an Internal Affairs investigation. Robinson was not required to submit to an Internal Affairs investigation after Wallace reported he granted an interview to a male whose application had been rejected and he altered a document in which Wallace recommended that another male's application be rejected because of his extensive criminal history. Davis approved Wallace's recommendation.

37. On or about December 9, 2019, Sherion Diane Berry, who is white, disclosed Wallace was a person with information about her race discrimination claims in *Berry v. City of Jackson*, 3:18cv339. Sherion Diane Berry also produced text message exchanges to the Jackson City Attorney's office which showed Wallace encouraged Sherion Diane Berry to apply for the manager of JPD's 911 public safety communications center in 2017.

Sherion Diane Berry was not selected for the position. Louisville-Jones was selected for the position. When the City of Jackson was seeking to fill the manager's position, only one white employee worked in JPD's 911 public safety communications center.

38. On or about Friday, December 20, 2019, Wallace confronted a female sergeant after she received complaints about the sergeant's disappearances and/or extended lunch breaks with her alleged boyfriend, Jackson Fire Department Fire Chief Willie Owens. On or about January 9, 2020, Tamarra Bowie, an Equal Employment Opportunity Officer, sent Wallace a memorandum regarding a complaint filed by Sergeant Kimberly Brown ("Brown") after Wallace changed Brown's duty hours.

39. On Friday, January 10, 2020, Wallace received a call from Halima Olufemi ("Olufemi") who worked in Lumumba's office. Olufemi told Wallace Dr. Safiya Omari wanted to meet with her at 3 p.m. on the 2nd floor of City Hall. Before reporting to Lumumba's office, Wallace called Davis, who was on vacation to ask why she had been summoned to Lumumba's office. Davis told Wallace he did not know why she had been directed to appear in Lumumba's office.

40. During the meeting in Lumumba's office, Lumumba told Wallace he was accepting her letter of resignation he directed Wallace and the other deputy chiefs to submit. Lumumba asked Davis, who appeared via a telephone conference, if there was anything he wanted to say. When Davis started to talk about a vote that had been taken against Wallace, Lumumba cut Davis off and changed the subject. Wallace asked Lumumba what, if anything, she had done to warrant his decision to remove her as a deputy chief in the absence of a recommendation by Davis, her immediate supervisor. Lumumba never provided Wallace with a reason for her removal. Lumumba did not accept the resignations of any of the male deputy chiefs.

41. Davis and Wallace spoke after the meeting with Lumumba and Dr. Omari. Davis told Wallace again a "vote" led to Lumumba's decision to demote Wallace. Davis told Wallace that Lumumba made the decision to remove her as deputy chief of administration. Davis told Wallace apparently what he wanted did not count. Davis also told Wallace he made it clear to Lumumba he was satisfied with her performance.

## CAUSE OF ACTIONS
## SEX DISCRIMINATION

42. The Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full. At all times relevant herein, Lumumba and Davis acted under the color of state law.

43. Plaintiff contends that she had a clearly established right under the Equal Protection clause of the Fourteen Amendment and Title VII of the Civil Rights Act of 1964 to be free from sex discrimination.

44. Lumumba and Davis knew or should have known Wallace had a clearly established right to be free from sex discrimination and was entitled to be treated like similarly situated male chief deputies. At all times relevant herein, the defendants had a custom and policy of silencing police officers, protecting high ranking males, including but not limited to the assistant police chief and male deputy chiefs and treating men police more favorably than she was treated. As a result of the defendants' customs and policies, Wallace's right to work in a workplace free of sex discrimination was violated. As a proximate consequence of the actions of the defendants, Wallace was unlawfully demoted as deputy chief and constructively discharged on account of her sex.

## RETALIATION

45. The Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full. At all times relevant herein, Lumumba and Davis acted under the color of state law.

46. Wallace was demoted from her position as deputy chief of administrations after Lumumba and Davis learned Wallace was going to testify in a lawsuit filed by Diane Berry, a white woman, who sued the City of Jackson for race discrimination after she was passed over for the 911 Public Safety Communications Manager's position.  Louisville Jones, an African American female, was selected for the position.

47. Wallace was demoted from her position as deputy chief of administration in retaliation for efforts to diversify the public safety communications division by encouraging Sherion Diane Berry to apply for the 911 Public Safety Communications manager's position; to file a charge of race discrimination after she was not selected for the position and in and agreeing to testify in Sherion Diane Berry's race discrimination lawsuit against the City of Jackson.

48. In addition, Wallace was retaliated against because she refused to remain silent when she discovered evidence that the assistant police chief's attempt to two male recruits whose prior criminal misconduct made them unsuitable to work for JPD.

49. At all times relevant herein, Wallace had a right to assist Sherion Diane Berry who believed she was a victim of discrimination to seek redress through the Equal Employment Opportunity Commission and subsequently in this Court.  Wallace also had a right to call out male recruits whose criminal conduct made them unworthy to work in law enforcement.

**TORTIOUS INTERFERENCE WITH HER RIGHT TO WORK**

50. The Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.

51. In the City of Jackson, Davis is the only JPD employee who reports directly to the Mayor. Even though Wallace was not a direct report to Lumumba, Lumumba removed Wallace from her position as deputy chief and caused her constructive discharge.

## **CONSTRUCTIVE DISCHARGE**

52. The Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full. At all times relevant herein, Wallace had a right to work on the same terms and conditions as similarly situated male deputies. Robinson's micromanaging of Wallace may her continued tenure at JPD untenable and eventually forced Wallace to retire to avoid Lumumba, Davis and Robinson treating her different than they treated similarly situated male deputy chiefs.

## **DAMAGES**

53. As a consequence of the foregoing misconduct of the Defendants, Wallace sustained pain and suffering, physical injury, great mental distress, depression, insomnia, shock, fright and humiliation as a result of the violation of her constitutionally protected and other legal rights.

54. As a consequence of the foregoing misconduct of the Defendants, Wallace has been damaged in an amount exceeding the jurisdictional requirements of this Court.

## **RELIEF**

55. Plaintiff requests that the Court issue the following relief:

   a. Award Wallace equitable back pay, front pay, reinstatement, economic damages for her lost pay, together with compensatory and punitive damages; and

   b. Award Wallace attorney fees, costs and expenses of litigation and a jury trial.

   **WHEREFORE PREMISES CONSIDERED**, Plaintiff Tina L. Wallace demands judgment against the Defendants in an amount exceeding the jurisdictional

requirements of this Court, all together with the costs and disbursement action, including attorneys' fees, plus interest, and any other relief which this Court deems just and proper premises.

    **RESPECTFULLY SUBMITTED** this, the 12th day of May, 2021.

        **TINA L. WALLACE**

        By: //s// *Lisa M. Ross*
            Lisa M. Ross (MSB # 9755)
            Post Office Box 11264
            Jackson, MS 39283-1264
            (601) 981-7900 (telephone)
            (601) 981-7917 (facsimile)

            Attorney for Plaintiff