UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TINA L. WALLACE                                                    PLAINTIFF

V.                              CIVIL ACTION NO. 3:21-CV-326-KHJ-MTP

CITY OF JACKSON, et al.                                          DEFENDANTS

ORDER

Before the Court are Motions for Summary Judgment by Chokwe Antar

Lumumba [71] and the City of Jackson [89]. For the following reasons, the Court

denies Lumumba's motion and grants in part and denies in part the City's motion.

I.      Background

This case arises from Plaintiff Tina Wallace's employment with the City of

Jackson as a Jackson Police Department ("JPD") officer. Am. Compl. [3] ¶ 10. Her

employment began in February 1993 as Deputy Chief of Patrol Operations

*Id.* She left to attend the FBI Academy, then returned to her role as Deputy Chief at

JPD until former Police Chief Lee Vance demoted her. *Id.* Wallace sued the City

and Vance in a previous action for race discrimination, sex discrimination, and

retaliation. *Id.* ¶ 11.

Vance stepped down as Police Chief shortly after Wallace filed the first

lawsuit, and Lumumba appointed James Davis as Interim Police Chief. *Id.* Davis

later promoted Wallace to Deputy Chief of Administration. *Id.* Wallace settled her

lawsuit against the City and Vance on February 6, 2019. *Id.* at 21; Wallace Dep. [89-

2] at 43. She released the City from all claims arising from events that happened before March 25, 2019. [90] at 10; [89-1] at 5.

Later in 2019,[1] the City conducted an independent assessment of JPD to evaluate various concerns, including staffing and morale. *See* Lumumba Dep. [89-12] at 11, 17. The City hired consultants to assist with the assessment. *Id.* at 11; Davis Dep. [89-13] at 8, 12; Omari Dep. [89-14] at 14. The assessment revealed various concerns with the command staff including morale and lack of unity. [89-12] at 12. When asked what members of the command staff the consultants expressed concerns about, Lumumba said he could not remember everyone, but "a common name was Tina Wallace." *Id.* According to Lumumba, concerns over Wallace "ranged from intimidation to unjust treatment." *Id.* In May 2019, Lumumba told all the deputy chiefs—including Wallace—that personnel were complaining about their lack of interpersonal and leadership skills and demanded they all resign and serve in an interim capacity. *Id.*; [3] ¶ 28. Wallace was the only female in JPD command at that time. [86] at 5.

Throughout her time at JPD, Wallace "routinely campaigned for JPD to [act] against police officers and civilian employees who engaged in criminal and unethical conduct." [3] ¶ 32. For example, she recommended denial of a male police recruit who had sexual misconduct allegations against him while he was in the military. *Id.* ¶ 34. She also recommended rejecting a male applicant—Xavier Hill—who had an extensive criminal history. *Id.* ¶ 35. But Assistant Chief Ricky Robinson

---

[1] The record does not clarify the exact time frame of the assessment. The City represents it occurred "[a]round 2019." [90] at 4.

allegedly altered Hill's application and changed Wallace's recommendation to approve him. *Id.*

When another employee caught Hill stealing impounded property during duty hours, Wallace instructed a commander to file an offense report and sign an affidavit for embezzlement against Hill. *Id.* ¶ 36. According to Wallace, Hill was terminated for that incident. [86] at 26. At a meeting on October 3, 2019, Robinson accused Wallace of retaliation based on her instruction to the commander. [3] ¶ 36. Robinson told Wallace to submit a memo about the meeting. *Id.* When she submitted the memo the next day, she also filed a complaint against Robinson. *Id.* ¶ 37; [86] at 25–26. In the complaint, she opposed Robinson's hiring practices and accused him of sex discrimination and retaliation against her for opposing his recruits. *Id.* ¶ 37.

In December 2019, Sherion Diane Berry disclosed Wallace as a potential witness in her own lawsuit against the City of Jackson. *Id.* ¶ 38; [89-2] at 40, 76. Berry—a white woman—lost a JPD manager job to an African American woman. [3] ¶ 38. Wallace had encouraged Berry to apply for the position and to file an EEOC Charge of Discrimination if she lost the job due to her race. *Id.*

In January 2020, Lumumba only accepted Wallace's resignation and not any resignations from male deputy chiefs.[2] *Id.* ¶¶ 41–42; [89-12] at 51. At first, Wallace was the only member of JPD command—the Police Chief, Assistant Chief, and four Deputy Chiefs—that was demoted. [89-12] at 13. The assessment continued and led

_____

[2] In her Amended Complaint, Wallace uses "resignation" and "demotion" interchangeably. *See e.g.,* [3] ¶¶ 41–42.

to Robinson's demotion seven months after Wallace due to his poor performance and his frequent disagreements with her. *Id.* at 13, 24; [100] at 26.

On May 12, 2021, Wallace filed this lawsuit against the City, Lumumba in his individual capacity, Davis in his individual capacity, and John Does 1–4. Compl. [1]; [3] ¶¶ 4–7. She seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the Mississippi Tort Claims Act ("MTCA"). She asserts claims for sex discrimination, retaliation, tortious interference with her right to work, and constructive discharge. [3] at 13–15. She also seeks declaratory relief under 28 U.S.C. § 2202. *Id.*

Wallace alleges she had a clearly established right to be free from sex discrimination in the workplace and to the same treatment as similarly situated male chief deputies. *Id.* ¶ 44–45. She also alleges she was unlawfully demoted as Deputy Chief of Administration and later constructively discharged when she retired. [3] ¶ 45. Finally, she claims she was demoted in retaliation for participating in Berry's discrimination lawsuit after Lumumba and Davis discovered she would testify and for her complaints against Robinson. *Id.* ¶¶ 38, 47.

The only remaining defendants in this lawsuit are the City and Lumumba (collectively, "Defendants"). All claims remain against the City, including sex discrimination, retaliation, tortious interference, and constructive discharge. The only remaining claims against Lumumba are for sex discrimination and retaliation. The City seeks summary judgment on all claims against it, and Lumumba seeks summary judgment on Wallace's remaining claims against him.

II.    Standard

Summary judgment is appropriate if the movant shows "no genuine dispute as to any material fact" exists, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). A dispute is "genuine" if evidence demonstrates that a "reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views all facts, evidence, and reasonable inferences in the non-movant's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

If the non-movant bears the burden of proof at trial, the movant need only demonstrate the record lacks evidentiary support for the non-movant's claim. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). The movant must "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party need not "present evidence proving the absence of a material fact issue . . . [but] may meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Trans. Co.*, 402 F.3d 536, 544 (5th Cir. 2005) (citation omitted). But "unsubstantiated assertions are not

competent summary judgment evidence." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

If the movant meets its burden, "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Bayle*, 615 F.3d at 355 (quotation omitted). The non-movant must present more than "speculation, improbable inferences, or unsubstantiated assertions." *Jones*, 936 F.3d at 321 (citation omitted). The nonmovant's failure "to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citation omitted). Notably, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458.

III.   Analysis

Defendants argue summary judgment is appropriate for all remaining claims. Specifically, Lumumba argues (1) qualified immunity shields him from liability for Wallace's claims and, alternatively, (2) Wallace cannot meet her summary-judgment burden for any claim against him. [72] at 10–12. The City argues Wallace's settlement of her prior lawsuit released all claims against it through March 25, 2019. Consequently, her evidence in this case is limited to acts after that date, which is insufficient to prove her claims. *See* [90] at 10–12. The Court first addresses Wallace's claims of sex discrimination, retaliation, constructive discharge,

and tortious interference with employment in turn. It then addresses Lumumba's
qualified-immunity assertion.

A.  Sex Discrimination

Wallace's Amended Complaint asserts sex-discrimination claims against
Lumumba under § 1983 and the City under both Title VII and § 1983. [3] ¶ 44.[3]
Title VII prohibits employers from "discriminat[ing] against any individual with
respect to his compensation, terms, conditions, or privileges of employment, because
of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff uses § 1983
as a "parallel remedy with Title VII in a . . . discrimination suit[,] the elements of a
cause of action are the same under both statutes." *Lee v. Conecuh Cnty. Bd. of
Educ.*, 634 F.2d 959, 962 (5th Cir. 1981).

 "A plaintiff can prove discriminatory motive through either direct or
circumstantial evidence." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766
(5th Cir. 2019) (citation omitted). When a claim rests on circumstantial evidence,
courts use the burden-shifting framework established in *McDonnell Douglas Corp.
v. Green*, 411 U.S. 792, 802–04 (1973), to analyze the claim. *See Smith v. City of St.
Martinville*, 575 F. App'x 435, 438 (5th Cir. 2014) (citations omitted). That
framework requires Wallace to first establish a prima facie case of discrimination by
showing: (1) she is a member of a protected class, (2) she was qualified for her
position, (3) she experienced an adverse employment action, and (4) she was

---

[3] Wallace's Amended Complaint also implied a sex-discrimination claim under Title
VII against Lumumba, but she already notified the Court she does not seek to impose
liability against him as an individual. *See* Order [23] at 5.

replaced by someone outside the protected class or treated less favorably than similarly situated employees under nearly identical circumstances. *Smith*, 575 F. App'x at 438–39. (citations omitted).

If Wallace establishes a prima facie case, the burden shifts to Defendants to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 439 (quoting *McDonnell Douglas*, 411 U.S. at 802). The burden then shifts back to Wallace to "produce substantial evidence indicating . . . the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (citations omitted). A showing of pretext "will usually be sufficient to survive summary judgment." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Wallace carries the "ultimate burden" throughout the analysis. *Outley*, 840 F.3d at 216.

### 1.  Prima Facie Case

Turning to Wallace's prima facie case of discrimination, Defendants concede the first three elements: (1) she is a member of a protected class, (2) she was qualified for her position, and (3) she suffered an adverse employment action. *See* [72] at 11–12; [90] at 13; *McDonnell Douglas*, 411 U.S. at 802–04. For the fourth element, Wallace notes that Joseph Wade—a male—replaced her. [71-1] at 46 (citing *Okoye v. Univ of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001) (noting evidence of replacement by someone outside plaintiff's protected class may meet fourth prong)). Neither Lumumba nor the City addresses that argument. Wallace has therefore shown a prima facie case, giving rise to an "inference of

discrimination." *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 202 (5th Cir. 2008) (per curiam) (citations omitted).

### 2.   Legitimate, Non-Discriminatory Reason

The burden then shifts to Lumumba and the City to articulate a legitimate, non-discriminatory reason for demoting Wallace. *See McDonnell Douglas*, 411 U.S. at 802. Their burden is low. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)) (noting employer's burden at this stage "is one of production, not persuasion").

Both Lumumba and the City provide these reasons for Wallace's demotion: (1) repeated complaints about her interpersonal skills; (2) her unjust treatment of and specific threats against fellow employees; and (3) lying—specifically, misrepresenting other employees' statements. [72] at 12–13; [19] at 25. All have constituted legitimate, non-discriminatory reasons for an adverse employment action. *See Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999) (noting lack of interpersonal skills legitimate non-discriminatory reason for firing plaintiff); *Reed v. Madison Cnty.*, No. 3:16-CV-51, 2017 WL 4508892, at *4 (S.D. Miss. May 9, 2017) (collecting cases and holding history of disciplinary actions, including mistreatment of fellow employees, is a legitimate non-discriminatory reason for firing plaintiff); *Garcia v. Randolph-Brooks Fed. Credit Union*, No. 18-CV-978, 2020 WL 364133, at *5 (W.D. Tex. Jan. 22, 2020) (collecting cases and noting "lying is a legitimate, non-discriminatory reason to terminate or discipline an employee").

Lumumba and the City meet their burden. Accordingly, the "presumption of discrimination disappears," and the burden shifts back to Wallace to prove those reasons are pretextual. *See Outley*, 840 F.3d at 216.

### 3. Pretext

Wallace, who has always had the ultimate burden, must now "produce substantial evidence that the proffered legitimate non[-]discriminatory reason is a pretext for discrimination." *Id.* (citation omitted). She may do so "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* at 218 (citation omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "[I]nconsistent explanations for an employment decision cast doubt on the truthfulness of those explanations." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) (citations omitted).

Wallace argues Defendants' reasons for demoting her are pretextual because they are inconsistent. *See* [86] at 21–23. For example, she argues lack of interpersonal skills was not listed as the reason for Wallace's demotion. [86] at 21 (citing [71-2] at 103–05). She also points to various positive comments from Chief Davis about her professionalism and administrative work and argues he never received evidence that she lacked interpersonal skills. *Id.* at 22–23. She also argues the remaining reasons—unjust treatment of fellow employees, threats against fellow employees, and lying—were not reasons Lumumba told her initially when he

demoted her. *Id.* at 23. Instead, she argues he "added" them as additional reasons for her demotion two years after he told her she was demoted for lack of interpersonal skills. *Id.*

Whether Wallace creates a genuine dispute that Defendants' reasons for firing her was pretextual is a close call. But construing all reasonable inferences in the light most favorable to her, the Court finds sufficient evidence of disparate treatment—namely, in the seven-month difference between Wallace's and Robinson's demotion and the City's inconsistent explanations in its reasons for firing her—and denies summary judgment on her sex-discrimination claims.

B.  Retaliation

Wallace next asserts retaliation against the City under both Title VII and § 1983, and against Lumumba under § 1983. [100] at 31–32. Wallace argues Defendants demoted her in retaliation for three main reasons. The first relates to Wallace encouraging Berry to apply for a manager position, telling her to file a race-discrimination charge against the City when she lost the position to an African American woman, and agreeing to testify in the lawsuit. [3] ¶¶ 47–48; *see* [86] at 24; [100] at 31. The second alleged reason is Wallace's complaints of disparate treatment against Ricky Robinson. [3] ¶ 50; [86] at 24; [100] at 31. The third alleged reason—included in her complaints against Robinson—is Wallace opposing male police recruits who had records of misconduct.[4] [3] ¶ 49; [86] at 24; [100] at 31. In

---

[4] Although this is not a protected activity under Title VII, it may constitute a protected activity under the First Amendment. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274 (2009) (discussing the two types of protected activity

her Response to the City's motion, she also raises settlement of her prior lawsuit as grounds for retaliation. [100] at 34; *see Wallace*, 2018 WL 6251863.

Title VII retaliation, at the prima facie stage, requires a plaintiff to show: (1) the plaintiff engaged in a protected activity under Title VII, (2) an adverse employment action occurred, and (3) a causal connection existed between the protected activity and the adverse action. *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (citation omitted). First Amendment retaliation requires a plaintiff to show: (1) she suffered an adverse employment action; (2) because of speech involving a matter of public concern; (3) her interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency; and (4) the protected speech motivated the adverse action. *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 341 (5th Cir. 2003).

The parties' dispute only turns on the causation elements of Wallace's retaliation claims. *See* [70] at 2; [90] at 21–23. Defendants argue she cannot meet those elements because Lumumba and the other "City decisionmakers" were unaware of Wallace's involvement in Berry's lawsuit. [72] at 14; [90] at 21–23. Lumumba also argues the decision to demote Wallace was a "team" decision rather than his personal decision. [72] at 4; [89-12] at 24. Wallace responds that she meets causation based on temporal proximity. [86] at 26–27. Specifically, she argues she was demoted three months after her complaints against Robinson and his hiring

---

under Title VII); *Lane v. Franks*, 573 U.S. 228, 240–41 (2014) (discussing speech on a matter of public concern as basis for First Amendment retaliation).

practices and one month Berry identified her as a witness. [86] at 26. That temporal proximity, she argues, satisfies causation. *Id.* at 26–27 (collecting cases).

Wallace relies primarily on *Clark County School District v. Breeden*, where the Supreme Court expressly noted that the temporal proximity must be "very close" to establish a prima facie case of retaliation by itself. 532 U.S. 268, 273–74 (2001) (citations omitted). The Supreme Court has not defined what is "very close," but the Fifth Circuit has "held that a period of two-and-a-half months, a period of two months, and a period of six-and-a-half weeks are close enough" for temporal proximity. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (collecting cases). Yet it has held that a five-month lapse is too long without other evidence of retaliation. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (citation omitted).

Wallace cannot rely on her involvement in Berry's case for causation. Defendants correctly argue she provides no evidence that they were aware of it. She testified herself that she told no one that Berry disclosed her as a witness. [89-2] at 76.[5]

---

[5] The City argues the Court should limit Wallace's Title VII retaliation claim to her involvement in Berry's lawsuit because it is the only protected activity she cited in her EEOC charge. [90] at 22. It relies on *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (noting Title VII cause of action limited by scope of EEOC investigation reasonably expected to grow out of initial charge) and *Herster v. Bd. of Supervisors of La. State Univ.*, 723 F. Supp. 3d 627, 643 (M.D. La. 2014). But the Fifth Circuit in *Fine* applied that rule to a discrimination claim rather than a retaliation claim, 995 F.2d at 578, and the Middle District of Louisiana in *Herster* did not limit the plaintiff's retaliation claim accordingly, 723 F. Supp. 3d at 643. Those authorities do not convince the Court to dismiss Wallace's Title VII claim.

But the temporal proximity between Wallace's complaints against Robinson may satisfy causation. Wallace's demotion came three months after her complaints against Robinson on October 4, 2019, [79-1] at 1; [89-2] at 83; [86] at 25–26, which the Fifth Circuit has not expressly stated is sufficiently close without other evidence, *see Brown*, 969 F.3d at 578. But given that two and a half months has been sufficient temporal proximity, three months is sufficient temporal proximity to at least create a genuine dispute on causation. *See id.* (citing *Garcia v. Prof. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019)).

The circumstances surrounding Wallace's settlement are suspicious as well. Wallace settled her lawsuit against the City and Vance on February 6, 2019. [89-2] at 43; [3] ¶ 21. Lumumba could not "remember the exact date" he requested resignations from all JPD command staff, but Wallace alleges it was in May 2019—about three months after her settlement—and every member of command staff complied. [89-12] at 17; [3] ¶ 29. Although Lumumba did not accept any resignations until January 2020, he initially only accepted Wallace's, and he admitted to not accepting resignations from any male deputy chiefs at that time. [89-12] at 51; [3] ¶¶ 40–41. And notably, Wallace filed her EEOC charge for this lawsuit in October 2019, three months before Lumumba accepted her resignation. [89-2] at 4. After Wallace's termination, seven months passed before Lumumba accepted any other resignations, when he ultimately accepted Robinson's resignation. [89-12] at 13, 20; [100] at 26.

14

Whether Wallace has created fact questions as to her retaliation claims is also a close call. But given the "very close" period between Berry identifying her as a witness and her demotion, along with the suspicious timing surrounding her other protected activities, the Court finds summary judgment is not appropriate. Construing all reasonable inferences in the light most favorable to her, and because her sex-discrimination claim survives summary judgment, the Court denies summary judgment on Wallace's retaliation claims.

C.  Constructive Discharge

The Court previously dismissed Wallace's constructive-discharge claim against Lumumba for failure to plausibly allege "conduct that would compel a reasonable employee to resign." *See* Order [23] at 14–16. The City, addressing it as an element of Wallace's § 1983 sex-discrimination claim, now argues Wallace provides no evidence that she suffered a constructive discharge. [90] at 2, 14. Wallace does not respond to that argument or raise any other argument related to constructive discharge. That failure to respond constitutes abandonment of her constructive-discharge claim. *See Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) ("[a] plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims"). Accordingly, Wallace fails to prove a genuine dispute exists as to any material facts related to her constructive-discharge claim. The Court grants summary judgment and dismisses any constructive-discharge claim, construed as a separate discrimination claim, with prejudice.

15

D.  Tortious Interference with Employment

The only remaining tortious interference claim is against the City. The Court previously dismissed the claim against Lumumba because Wallace merely alleged "Lumumba interfered with [Wallace's] at-will employment relationship with the City of Jackson by removing Wallace from her position as deputy chief and permitting conduct by male employees that caused her subsequent constructive discharge." *See* Order [23] at 14. The City now argues it is immune to that claim. [90] at 23. Wallace does not respond to that argument. Wallace's failure to respond constitutes abandonment of her tortious-interference claim. *See Terry Black's Barbecue*, 22 F.4th at 459. The Court grants summary judgment and dismisses the claim with prejudice.

E.  Qualified Immunity for Lumumba

Lumumba argues qualified immunity shields him from Wallace's § 1983 claims because he is not the ultimate decision-maker and no but-for cause exists between his actions and Wallace's demotion. [72] at 10. "[T]he Fifth Circuit . . . [has] clarified that § 1983 liability may attach to non-decisionmakers . . . when the defendant's conduct is a 'but-for' cause of a constitutional violation." *James v. Cleveland Sch. Dist.*, No. 4:19-CV-66, 2021 WL 3277239, at *13 (N.D. Miss. July 30, 2021) (citing *Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018)). That standard requires a plaintiff to "demonstrate what each defendant did to violate the asserted constitutional right." *Id.* (citation and emphasis omitted).

Lumumba's argument fails for two reasons. First, he cites no authority to support his position—other than his reliance on *Brady v. Houston Independent School District*—that inconsistencies in explanations for an adverse employment action does not adequately support a retaliation claim. [72] at 10 (citing 113 F.3d 1419, 1425 (5th Cir. 1997)). But *Brady* only concerns a retaliation claim and does not involve a sex-discrimination claim. *See* 113 F.3d at 1422. And the *Brady* plaintiff provided no evidence to defeat qualified immunity on her retaliation claim to back up her assertions of inconsistent explanations. *See id.* at 1424 (noting plaintiff "failed to present a chronology of events that would allow reasonable jurors to draw an inference of retaliation"), 1425 ("None of [the plaintiff's] assertions . . . indicate[] that any of the [defendants] possessed a retaliatory motive, especially when viewed in conjunction with the dearth of any evidence suggesting retaliation.").

Second, Wallace—unlike the *Brady* plaintiff—provides evidence suggesting retaliation along with her assertion that Lumumba's reasons for terminating her were inconsistent. For example, she offers evidence that Lumumba took part in the decision to demote her and was the one to call her to his office and inform her of the demotion. [89-12] at 24, 28, 40. And the temporal proximity between Wallace's protected activities and her demotion provides a "chronology of events that would allow reasonable jurors to draw an inference of retaliation." *See Brady*, 113 F.3d at 1425. Accordingly, "qualified immunity is not available for substantiated claims of

17

intential discrimination." *See Wallace*, 2018 WL 6251863, at *5 (collecting cases). Qualified immunity does not protect Lumumba from Wallace's § 1983 claims.

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court DENIES Defendant Chokwe Antar Lumumba's [71] Motion for Summary Judgment and GRANTS IN PART AND DENIES IN PART the City of Jackson [89] Motions for Summary Judgment. Wallace's claims for tortious interference with employment and constructive discharge against the City are dismissed with prejudice. Her claims for sex discrimination and retaliation will proceed to trial.

SO ORDERED, this the 18th day of May, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE